**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JOHN D. PINEGAR, individually, and in his capacity as Trustee of the JOHN D. PINEGAR TRUST, and CHRISTOPER HEGER<br><br>*Plaintiffs*,<br><br>v.<br><br>SCOUT ENERGY MANAGEMENT LLC,<br><br>*Defendant*. | Case No. 25-1113-AJP-RES |

**MEMORANDUM AND ORDER**

Plaintiff John D. Pinegar, individually and in his capacity as Trustee of the John D. Pinegar Trust, and Christopher Heger bring suit against Defendant Scout Energy Management LLC. They assert two federal claims: (1) a claim under the Resource Conservation Recovery Act ("RCRA"), 42 U.S.C. §§ 6972 *et seq*., and (2) a claim under 49 U.S.C. § 60121 of the Natural Gas Pipeline Safety Act ("PSA"). In addition, Plaintiffs assert several state law claims, including a statutory claim under K.S.A. 65-6203. Defendant has filed a Motion to Dismiss (Doc. 46) seeking dismissal of the two federal claims and the Kansas statutory claim brought under K.S.A. 65-6203. For the reasons stated below, the Court grants in part and denies in part Defendant's motion.

## I. Factual and Procedural Background[1]

Plaintiff John D. Pinegar is the Trustee of the John D. Pinegar Trust. The Pinegar Trust is the owner of real property of two sections of land, Sections 3 and 22, in Stevens County, Kansas. Plaintiff Christopher Heger is the farm tenant for these two sections of land. Defendant Scout Energy Management LLC is a Texas limited liability company and holds an easement on the property for which to operate a natural gas pipeline.

On July 21, 2024, Defendant's pipeline failed on Section 3, causing a release of natural gas which caught fire and burned for three hours. The explosion left a crater, and no vegetation has grown on the area since the release of gas. In addition, the explosion caused significant damage to a nearby water well. The explosion and continued lack of vegetation caused damages to Heger due to lost crops. Defendant had a consultant conduct sampling of the area, which detected petroleum in the soil at the site of the first leak.

On June 26, 2025, Defendant's pipeline had another leak, this time on Section 22. This leak was discovered by a crop duster, who then informed Plaintiff Heger. A work crew from Defendant informed Heger that the pipeline was a twenty-inch natural gas line formerly installed by ONEOK and now operated by Defendant.

Plaintiffs seek relief under 42 U.S.C. § 6972(a)(1)(B) of the RCRA, which allows any person to commence an action in federal court against any person or entity that has, among other things, handled, transported, or disposed of any solid

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint unless otherwise cited.

or hazardous waste which may present an imminent and substantial endangerment to health or the environment, and under 49 U.S.C. § 60121 of the PSA, which allows a person to bring a civil action in federal court seeking injunctive relief for alleged violations of the PSA. Plaintiffs also seek relief pursuant to K.S.A. 65-6203, which requires any person responsible for the release of materials detrimental to the water or soil of the state to compensate the injured property owner. Finally, Plaintiffs allege state law claims for nuisance and trespass. Defendant seeks dismissal of the federal claims and the Kansas statutory claim, asserting that Plaintiffs fail to state a claim.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must determine whether a complaint contains sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but it need not afford such a presumption to legal conclusions. *Id.* at 678–79. Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities. *See id.* at 678.

## III. Analysis

The Court will first address Plaintiffs' federal claims and will then turn to Plaintiffs' statutory claim under Kansas law.

### A. Plaintiffs Fail to State an RCRA Claim

Plaintiffs bring a claim under the RCRA alleging that Defendant's natural gas pipeline failed resulting in damage to the land. The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Davies v. Nat'l Co-op. Refinery Ass'n*, No. 96-1124-WEB, 1996 WL 529208, at *2 (D. Kan. July 12, 1996) (citation omitted). "[C]hief responsibility for enforcement of RCRA rests with the Administrator of the Environmental Protection Agency." *Id.* The RCRA, however, "contains a 'citizen suit' provision that permits a private party to enforce its provisions in some circumstances." *Id.* (citation omitted). Specifically, 42 U.S.C. § 6972(a)(1)(B) provides that

> any person may commence a civil action on his own behalf--against any person . . . including any past or present generator . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

"Solid waste" is defined by the RCRA as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial,

commercial, mining, and agricultural operations, and from community activities . . . ." 42 U.S.C. § 6903(27).

"'[H]azardous wastes are a subset of 'solid wastes.'" *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F. 2d 1305, 1313 (2nd Cir. 1993) (citing 42 U.S.C. § 6903(5)). Specifically, the RCRA defines "hazardous waste" as

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may--(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.
> 42 U.S.C. § 6903(5)(A)-(B).

"Accordingly, for a waste to be classified as hazardous, it must first qualify as a solid waste under RCRA." *Connecticut Coastal Fishermen's Ass'n*, 989 F.2d at 1313.

Defendant argues that Plaintiff's RCRA claim should be dismissed because the material released was natural gas and does not fall under the definition of "solid waste" or "hazardous waste" under the RCRA. Plaintiffs concede that the Environmental Protection Agency ("EPA") has not issued any direct guidance that natural gas leaks from pipelines are solid waste under the RCRA. Plaintiffs, however, contend that the gas releases are "solid waste" under the RCRA because (1) gases in a pipeline are "contained gaseous material;" (2) the releases are uncontained gases and are "discarded material;" or (3) the gases were carrying other contaminants which entered

the soil. Finally, Plaintiffs argue that the releases constitute hazardous waste. The Court will address each contention.

1. *The gases are not "contained gaseous material."*

Plaintiff argues that the releases are solid waste because gas in a pipeline is "contained gaseous material." Solid waste under the RCRA is defined as "other discarded material, including . . . contained gaseous material." 42 U.S.C. § 6903(27). However, "[t]he definitional section [of solid waste], § 9603(27), includes only contained gaseous materials that have been discarded. In other words, in order to be considered a solid waste for RCRA purposes, the gaseous material must be *both* discarded and contained." *Helter v. AK Steel Corp.*, No. C-1-960-527, 1997 WL 34703718, at *11 (S.D. Ohio Mar. 31, 1997), *abrogated in part by Sierra Club v. United States Env't Prot. Agency*, 60 F.4th 1008 (6th Cir. 2023)). Natural gas in a pipeline "cannot be considered a solid waste before it is discarded." *Id.*

Here, when the natural gas was contained in the pipeline, it was not "discarded material." And when the natural gas was released, it was no longer "contained gaseous material." Because the natural gas does not fall under both "discarded material" and "contained gaseous material," it does not fall under the definition of "solid waste" in § 6903(27).

2. *The uncontained gaseous material does not fall under the definition of "other discarded material" of solid waste.*

Plaintiffs also contend that uncontained gases in certain circumstances should be considered solid waste because they are "other discarded material."

(Doc. 50 at 8). Defendant disagrees and relies on a case from the Northern District of Illinois for support that natural gas is not a solid or hazardous waste under the RCRA.

In *Northern Illinois Gas Co. v. City of Evanston*, the Northern District of Illinois found that the solid waste definition in § 6903(27) was "ambiguous as to whether an uncontained gas, such as methane, is a RCRA solid waste." *N. Ill. Gas Co. v. City of Evanston, Ill.*, 162 F. Supp. 3d 654, 659 (N.D. Ill. 2016).[2] It first noted that "[t]he most natural reading of the provision's language is that gas cannot be a 'solid waste' because it is not a solid at all." *Id.* However, "other non-solid materials are explicitly included within the definition of 'solid waste,' such as liquids and 'contained gaseous material.'" *Id.* at 659–60. The court also noted that "the list of what could constitute 'discarded materials' appears to be a non-exhaustive one, at least on its face." *Id.* at 660.

Because it found that the statute was ambiguous, the court looked to two rulemakings made by the EPA. *Id.* (noting that Congress had authorized the EPA to "oversee the implementation of RCRA and to issue regulations with the force of law in furtherance of this effort") (citations omitted). Both of the EPA's rulemakings found that "uncontained gases do not fall within RCRA's definition of solid waste." *Id.* After considering these rulings and

---

[2] The Court notes that the *Northern Illinois Gas Co.* opinion sometimes references § 6903(26) and § 6903(27) when discussing the solid waste definition. Because solid waste is defined in § 6903(27), and § 6903(26) defines "sanitary landfill," the Court assumes the § 6903(26) reference is a typo.

giving them *Chevron* deference, the court found that the EPA's determination that "uncontained gases are excluded from the definition is a reasonable interpretation of Section 6903(27) and is consistent with the most natural reading of that provision." *Id.* at 661.

The court, however, continued on in its analysis and stated that even if the EPA's interpretation was not entitled to *Chevron* deference, its interpretation was persuasive. *Id.* at 662. The court stated that "even in the absence of the two rulemakings, the EPA repeatedly has stated its view that uncontained gases are not solid wastes." *Id.* (citation omitted). Furthermore, the court noted, "for good measure," that "numerous courts have concluded that uncontained gases are not RCRA solid wastes." *Id.* (citing *United States v. Sims Bros. Constr., Inc.*, 277 F.3d 734, 740 (5th Cir. 2001)); *Helter*, 1997 WL 34703718, at *12). Ultimately, the court concluded that the release of methane gas from natural gas pipelines did not meet the definition of RCRA solid waste. *Id.* at 663.

The Court recognizes that the decision from the Northern District of Illinois is non-binding authority, but it speaks directly to the issue. Its reasoning is persuasive as it contains a detailed analysis and notes that both the EPA and courts have concluded that uncontained gaseous materials are not solid waste under the RCRA. Plaintiffs take issue with the case noting that it reached its conclusion using *Chevron* deference and that, in 2024, the United States Supreme Court overruled *Chevron* deference in *Loper Bright*

*Enterprises v. Raimondo*, 603 U.S. 369 (2024). In *Loper Bright*, however, the Supreme Court clarified that its ruling does "not call into question prior cases that relied on the *Chevron* framework." 603 U.S. at 412. More importantly, the Northern District of Illinois also alternatively considered the statutory definition of solid waste under § 6903(27) without giving the EPA's interpretation *Chevron* deference and still found that solid waste did not include methane gas in a pipeline. *N. Illinois Gas Co.*, 162 F. Supp. 3d at 662–63.

Plaintiffs agree that the statute does not specifically mention "uncontained gaseous material," but they argue that uncontained gases can be regulated by the RCRA because the list of "discarded material" is a non-exhaustive list. The Court recognizes that some courts, including the Northern District of Illinois, have determined that the list of "other discarded materials" is not an exhaustive list. *Id.* at 660; *Citizens Against Pollution v. Ohio Power Co.*, No. C2-04-CV-371, 2006 WL 6870564, at *5 (S.D. Ohio July 13, 2006) (noting that "the reference to those materials in regards to discarded material is merely illustrative, not comprehensive"). However, the definition of "other discarded materials" explicitly includes "contained gaseous material." 42 U.S.C. § 6903(27). "As in all statutory construction cases, [the Court] begin[s] with 'the language itself [and] the specific context in which that language is used.'" *McNeill v. United States*, 563 U.S. 816, 819 (2011) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). To construe the definition of "other discarded material" to include *un*contained gaseous material

when the statute specifically references "contained gaseous material" would render the word "contained" meaningless. *See Bridger Coal Co./Pac. Mins., Inc. v. Dir., Off. of Workers' Comp. Programs*, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.") (citation omitted). Thus, because the statute specifically mentions "contained gaseous material," uncontained gaseous material is not included within the definition of solid waste.

*3. The release of natural gas is not regulated under the RCRA because it allegedly was carrying other contaminants.*

Plaintiffs also argue that the RCRA regulation includes solid waste that contaminates soil and water due to air emissions. They state that there is "robust caselaw to support that air emissions of methane and other materials are regulated under the RCRA if they are related to another solid waste issue." (Doc. 50 at 5). The issue with Plaintiffs' argument, however, is that Plaintiff must demonstrate that the air emissions or contamination is related to "solid waste." As discussed above, Plaintiffs cannot establish that the gaseous release falls under the definition of "solid waste" in the RCRA. Thus, because Plaintiffs cannot establish that the release of natural gas is a solid waste under the RCRA, they also cannot demonstrate that the alleged soil contamination was related to solid waste. Accordingly, the Court finds that the release of natural gas from a pipeline does not fit into the definition of "solid waste" in the RCRA.

*4. The natural gas release does not fall under the definition of hazardous waste.*

Plaintiffs also argue that the natural gas release is a hazardous waste under the RCRA. However, the RCRA defines "hazardous waste" as "a solid waste, or combination of solid wastes . . . ." 42 U.S.C. § 6903(5). Because hazardous waste is simply a subset of solid waste, *see Connecticut Coastal Fishermen's Ass'n*, 989 F.2d at 1313, and because the release of natural gas cannot meet the definition of solid waste, it follows that the release of natural gas cannot meet the definition of hazardous waste.

Accordingly, Plaintiffs fail to state an RCRA claim, and the Court dismisses this claim.

**B. Plaintiffs State a PSA Claim**

Plaintiffs also bring a PSA claim on the basis that Defendant's natural gas pipeline failed. Defendant seeks dismissal of this claim by arguing that Plaintiffs fail to meet basic pleading requirements because their allegations simply amount to a bare recitation of the elements. Plaintiff disagrees and contends that there are sufficient factual allegations to state a claim.

Section 60121(a)(1) of the PSA provides that "[a] person may bring a civil action in an appropriate district court of the United States for an injunction against another person . . . for a violation of this chapter or a regulation prescribed or order issued under this chapter." 49 U.S.C. § 60121(a)(1). In Plaintiffs' Amended Complaint, they allege that they sent Defendant several Notices of Intent to Sue under 49 U.S.C. § 60121 and 42 U.S.C. § 6972(9)(1)(B), and they attached those

notices to their Amended Complaint.[3] These notices reference § 60121, and they also reference that Defendant allegedly violated 49 C.F.R. § 192.703. This CFR provides: "(a) No person may operate a segment of pipeline, unless it is maintained in accordance with this subpart. (b) Each segment of pipeline that becomes unsafe must be replaced, repaired, or removed from service. (c) Hazardous leaks must be repaired promptly." The notices also set forth within them that violations occurred on specific dates.

In Plaintiff's Amended Complaint, they set forth a factual basis that Defendant's pipeline failed several times. In addition, they allege that Defendant has not remedied the damages or violations, and more than 60 days have passed since the notices were served. Although Plaintiffs' allegations are somewhat sparse, the Court concludes that they are sufficient to state a claim. Thus, it denies Defendant's motion to dismiss as to this claim.

### C. Plaintiffs Fail to State a Kansas Statutory Claim

Plaintiffs assert a claim under K.S.A. 65-6203, which requires any person responsible for the release of materials detrimental to the water or soil of the state to compensate the injured property owner. Defendant contends that this claim must be dismissed because any alleged release or discharge of natural gas is under the jurisdiction of the Kansas Corporation Commission ("KCC"). Plaintiffs disagree and argue that the KCC does not have jurisdiction over this claim.

---

[3] The Court may consider documents referred to in the complaint if they are central to the plaintiff's claims and the authenticity of those documents is not disputed. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

Pursuant to K.S.A. 65-6203(a)(1):

> It shall be the duty of any person responsible for an accidental release or discharge of materials detrimental to the quality of the waters or soil of the state to: (1) Compensate the owner of the property where the release or discharge occurred for actual damages incurred as the result of the release or discharge . . . .

This statute "imposes a duty on the responsible party to compensate the injured owner." *Eastman v. Coffeyville Res. Ref. & Mktg. LLC*, 295 Kan. 470, 284 P.3d 1049, 1054 (2012); *see also Brown v. Panhandle E. Pipeline Co. L.P.*, No. 16-cv-2428-JAR-TJJ, 2017 WL 8944043, at *7 (D. Kan. June 26, 2017) (stating that this statute is available to the property owner).

K.S.A. 65-6203(e), however, also states that "[t]he provisions of this section shall not apply to any release or discharge under the jurisdiction of the state corporation commission." Defendant argues that Plaintiff cannot maintain a statutory claim under K.S.A. 65-6203 because the discharge of gas is under the KCC's authority. It relies on K.S.A. 74-623(a) which provides that the KCC

> shall have the exclusive jurisdiction and authority to regulate oil and gas activities. The [KCC's] jurisdiction shall include: (1) All practices involved in the exploration for and gathering of oil and gas and the drilling, production, lease storage, treatment, abandonment and postabandonment of oil and gas wells; (2) underground porosity storage of natural gas, as defined in K.S.A. 55-1,115, and amendments thereto; and (3) prevention and cleanup of pollution of the soils and waters of the state from oil and gas activities described in (1) or (2).

In addition, Defendant relies upon K.S.A. 66-1,150 which states that the KCC is "authorized to adopt such rules and regulations as may be necessary to ensure conformance with the natural gas pipeline safety act . . . ."

The plain language of K.S.A. 65-6203(e) provides that it "*shall not apply* to any release or discharge under the jurisdiction of the [KCC]." And K.S.A. 74-623(a) explicitly states that the KCC's jurisdiction includes "cleanup of pollution of the soils . . . from oil and gas activities described in (1) or (2)." Plaintiffs allege in their Amended Complaint that leaks from Defendant's natural gas pipelines caused damage to both the land and to a water well. Accordingly, due to the plain language of K.S.A. 65-6203(e), Plaintiffs cannot state a claim under K.S.A. 65-6203(a). Thus, the Court dismisses this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 46) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated this 30th day of September 2026.

ANTHONY J. POWELL
UNITED STATES DISTRICT JUDGE